**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

DANIEL PIERSON,

               Plaintiff,

vs.                                       Case No.  3:05-cv-1045-J-MMH

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.
_____/

## **OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's Complaint for Judicial Review of a Final Decision of the Commissioner of the Social Security Administration (Dkt. No. 1; Complaint) seeking review of the final decision of the Commissioner of Social Security (Commissioner) denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under the Social Security Act. Administrative remedies have been exhausted, and the case is properly before the Court.

**I.**    **Background**

At the time of the administrative hearing, Plaintiff was twenty-nine years old and living with his mother. See Tr. at 421.[2] He had completed high school and previously worked as a welder, mechanic, and paper deliverer. See id. at 63, 71, 425. Plaintiff protectively filed

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order of Reference (Dkt. No. 15).

[2] The Transcript of Administrative Proceedings (Tr.) was filed on January 23, 2006, as an appendix to Defendant's Answer (Dkt. No. 12).

applications for DIB and SSI on September 16, 2002, see id. at 66, 408, alleging a disability onset date of February 28, 2002, see id. at 66. In his disability report, Plaintiff asserted that, due to his lower back pain, he is unable to work because he has constant pain, a limited range of motion, and cannot bend or stretch. Id. at 57.

After the applications were denied initially, id. at 23, 408, and on reconsideration, id. at 25, 412, Administrative Law Judge (ALJ) Robert Droker conducted a hearing on November 23, 2004, id. at 13. Plaintiff, who was represented by a non-attorney at the hearing, and Joanna K. Vander Kolk, a vocational expert (VE), testified at the hearing. Id. On February 25, 2005, the ALJ denied the applications, finding that Plaintiff was not disabled because he could perform work as a(n) office helper, order clerk, messenger, ticket seller, and parking lot attendant. Id. at 22 (Finding No. 12). The Appeals Council denied Plaintiff's request for review on August 4, 2005. Id. at 5. Consequently, the Commissioner's decision became final. See Sims v. Apfel, 530 U.S. 103, 106-07, 120 S.Ct. 2080, 2083, 147 L.Ed.2d 80 (2000). Plaintiff then timely filed the Complaint on October 11, 2005. See Complaint at 1.

## II.   **Standard of Review**

"Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A). In evaluating whether a claimant is disabled, the ALJ must

follow the sequential inquiry described in the regulations.³  See 20 C.F.R. §§ 404.1520(a), 416.920(a).  While the claimant generally bears the burden to prove that he or she is disabled, see 20 C.F.R. §§ 404.1512(a), 416.912(a), the burden shifts to the Commissioner at step five to show that the claimant can perform other work in the national economy.  See Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995) (per curiam).

The Commissioner's final decision may be reviewed by a district court pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  It is well established, however, that review is limited to "whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam); see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam); Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam).  It does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence."  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); see also Dyer, 395 F.3d at 1210; Foote, 67 F.3d at 1560.

---

³ The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

Step 1.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

Step 2.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

Step 3.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, then the claimant is disabled.  If not, the next question must be resolved.

Step 4.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

Step 5.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§ 404.1520(a)-(f); 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

The Commissioner's factual findings must be affirmed if they are supported by substantial evidence, "even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision." Johnson v. Barnhart, 268 F. Supp. 2d 1317, 1321 (M.D. Fla. 2002), aff'd, No. 02-16464, 2003 WL 21283493 (11th Cir. May 22, 2003) (unpublished table decision); see also Dyer, 395 F.3d at 1210; Shinn ex rel. Shinn v. Comm'r of Soc. Sec., 391 F.3d 1276, 1282 (11th Cir. 2004); Ellison, 355 F.3d at 1275; cf. Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998) ("An ALJ's decision will be reversed only if the decision is not supported by substantial evidence."). Substantial evidence has been defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (quoting Falge, 150 F.3d at 1322); see also Ellison, 355 F.3d at 1275; Foote, 67 F.3d at 1560. It is more than a scintilla but less than a preponderance of evidence. See Dyer, 395 F.3d at 1210; Ellison, 355 F.3d at 1275. In determining whether substantial evidence supports a finding, portions of the transcript may not be viewed in isolation, but rather must be examined as part of the record as a whole. See Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Foote, 67 F.3d at 1560.

On the other hand, no deference is accorded to the Commissioner's application of legal standards. See Moore, 405 F.3d at 1211; Lewis v. Barnhart, 285 F.3d 1329, 1330 (11th Cir. 2002) (per curiam); Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam). The application of legal standards is closely scrutinized. See Doughty, 245 F.3d at 1278. Indeed, where the Commissioner has used incorrect legal standards or failed to

explain her decision adequately and the reviewing court is unable to determine whether the correct law has been applied, then the court will reverse the decision. See Johnson, 268 F. Supp. 2d at 1321; see also Foote, 67 F.3d at 1558.

### III.     Summary of Argument

Plaintiff raises one issue on appeal. See Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Dkt. No. 19; Plaintiff's Memorandum) at 1.[4] He asserts that the ALJ posed an inadequate hypothetical question to the VE because the hypothetical did not include all of Plaintiff's impairments. Id. Accordingly, Plaintiff seeks remand of this case for the ALJ to ask a proper hypothetical question to the VE. Id. at 15.

### IV.     Discussion

Plaintiff asserts that the hypothetical question the ALJ asked the VE was inadequate because "[a]lthough ALJ Droker listed [Plaintiff]'s disorder of the spine and somatoform disorder as severe impairments in his decision, he failed to consider the combined effects of [Plaintiff]'s exertional and non-exertional impairments and failed to include those combined effects in his hypothetical to the VE." Id. at 10-11.[5] In support of this argument,

---

[4] Plaintiff also requested oral argument on the issues raised in his Memorandum. See Plaintiff's Memorandum at 1. The Commissioner opposes this request. See Memorandum in Support of the Commissioner's Decision (Dkt. No. 22; Commissioner's Memorandum) at 1. Upon due consideration, the Court finds that oral argument is unnecessary to resolve the issues raised in this appeal, and accordingly, Plaintiff's request is **denied**. See Local Rule 3.01(d), United States District Court, Middle District of Florida (Local Rule(s)).

[5] To the extent Plaintiff's argument can also be construed as an assertion that the ALJ failed to consider Plaintiff's impairments in combination, see id., the Court finds it without merit. An ALJ must "make specific and well-articulated findings as to the effect of the combination of impairments . . . ." Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987) (per curiam) (citations and quotations omitted); see 20 C.F.R. §§ 404.1545(e), 404.1523, 416.945(e), 416.923. The Eleventh Circuit Court of Appeals
(continued...)

Plaintiff cites several specific medical records regarding his lower back impairment and mental limitation that he believes establish additional limitations that were not included in the hypothetical question propounded by the ALJ. See id. at 11-13.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227; see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). However, specific diagnostic terms need not be used so long as "other descriptive terms adequately describe the claimant's impairments." Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999) (citing Roe v. Chater, 92 F.3d 672, 676 (8th Cir. 1996)). Further, hypothetical interrogatories need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987) (per curiam).

In the case before the Court, the ALJ propounded the following hypothetical question to the VE:

> Assume I find that the Claimant is 29 years old, has a high school education. Assume further I find that he could perform light work, and is fairly limited by the following exertional and non-exertional impairments. He needs to avoid ladder [sic] and unprotected heights. He'd need to avoid the operation of

---

⁵(...continued)
has held that this requirement was satisfied by the ALJ's statement that "'based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from an impairment, or combination of impairments of sufficient severity to prevent him from engaging in any substantial gainful activity . . . .'" Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (per curiam) (emphasis in original). In the instant decision, prior to discussing the evidence regarding each of Plaintiff's individual impairments, the ALJ noted that "[a] medically determinable impairment or combination of impairments is 'severe' if it significantly limits an individual's physical or mental ability to do basic work activities," and "that if a 'severe' impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis," id. at 15 (citations omitted and emphasis added). The ALJ also concluded that "[a]lthough the claimant's combined limitations do not allow him to perform the full range of light work . . ., there are other jobs which exist in significant numbers in the national economy that he could perform." Id. at 22 (Finding No. 12) (emphasis added). Thus, the Court finds that the ALJ considered all of Plaintiff's impairments in combination when formulating Plaintiff's RFC.

> heavy moving machinery.  He can occasionally bend, stoop, crawl, kneel, or crouch.  He needs a sit-stand option which has a 60-minute cycle.  Can he perform any of his past relevant work?

Id. at 444.[6]  The Court will review the specific medical records cited by Plaintiff to determine whether the ALJ's hypothetical question adequately included Plaintiff's impairments.

Plaintiff first cites to a record from an Emergency Room (ER) visit on April 14, 2001. See Plaintiff's Memorandum at 11.  On that occasion, Plaintiff sought treatment after having aggravated his previous lower back condition by lifting a motor at work.  See Tr. at 123-27. During that visit, the ER physician, Dr. Hood, indicated that Plaintiff's diagnosis was "acute/chronic low back pain" and circled the back or neck injury box, which included the following instructions: "1) bed rest for ___; 2) lie on back or side with knees flexed or bent; 3) heat or cold application four times a day, 20 minutes; 4) avoid heavy lifting; 5) if burning or shooting pains or numbness begin in an arm or leg, see your physician."  Id. at 127. Based upon this record, Plaintiff appears to contend that the ER physician's restrictions should have been included in the hypothetical question.  See Plaintiff's Memorandum at 11.

Initially, the undersigned notes that is not clear that the ER instructions are inconsistent with the limitations included in the hypothetical question.  Indeed, the directions did not suggest that Plaintiff was to stay on bed rest or lie down indefinitely, see Tr. at 127, and an instruction to avoid heavy lifting is not inconsistent with a finding that Plaintiff is capable of performing only light work.  Further, neither the application of a cold or hot

---

[6] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b); 416.967(b).

compress four times a day nor instructions to visit a physician if symptoms worsen appear to be functional limitations inconsistent with the ALJ's hypothetical.

Regardless, the Court finds that the ALJ did not err in not specifically including all of the ER instructions in the hypothetical. As noted above, there was no indication as to how long Plaintiff was to follow the instructions. See id. Indeed, while Plaintiff was referred to a doctor for an appointment the next day, there is no indication that he followed through with this appointment. See id. Further, as stated by the ALJ, the examination during the visit also revealed a negative straight leg raising test, normal reflexes, and no apparent motor or sensory deficit. Id. at 125. Thus, the Court finds that the specific ER instructions did not have to be included in the hypothetical question propounded to the VE.

Plaintiff next points to a February 18, 2003 treatment note from the Gainesville After Hours Clinic (Clinic). See Plaintiff's Memorandum at 11. Plaintiff visited the Clinic on a monthly basis from November, 2002 through November, 2004, seeking treatment for his lower back pain and refills of his prescription(s). See Tr. 141-47, 197-213, 224-27. During the February, 2003 visit, Plaintiff stated that his pain was controlled with Percocet and Robaxin. Id. at 143. The record from this visit also included the following assessment: "No lifting or prolonged standing." Id. at 143.

The Court finds that the ALJ's decision not to specifically include the February, 2003 limitations in the hypothetical question is supported by substantial evidence. Initially, the Court notes that the "no prolonged standing" limitation is consistent with the hypothetical requirement of a sit/stand option every sixty minutes. In any event, the ALJ addressed the Clinic records and stated that "the only physical examination finding noted was lumbar

tenderness," and that Plaintiff "reported good pain control with medications . . . ." Id. at 15. Additionally, while the February, 2003 treatment note indicated no lifting/prolonged standing, during the March, 2003 visit, Plaintiff merely indicated that he had "difficulty" with "lifting, prolonged standing" and there was no assessment regarding his ability to perform either of these tasks. Id. at 142. Then, in April, 2003 the assessment was merely "rest; Limited lifting." Id. at 141. Finally, none of the records after April, 2003 indicate any limitations regarding Plaintiff's ability to lift or stand. See id. at 197-213, 224-27. Thus, the Court finds substantial evidence supports the ALJ's decision not to include the specific February, 2003 limitations in the hypothetical question.

Plaintiff also cites to the Clinical Assessment of Pain by Consulting Physician and the Residual Functional Capacity Evaluation by Consulting Physician that were completed by Robert A. Greenberg, M.D. on November 3, 2004 (the 2004 Assessment). See Plaintiff's Memorandum at 11-12. Dr. Greenberg, a consultative examiner, examined Plaintiff on June 25, 2003. See Tr. at 148, 214. At the examination, Dr. Greenberg completed a Range of Motion Report Form (ROM Report), which indicated that, other than a decreased range of motion of the lumbar spine, Plaintiff's range of motion was intact. Id. at 150. He also outlined the visit and his impression of Plaintiff's impairments. Id. at 148-49. Dr. Greenberg noted that Plaintiff experienced "lumbar pain climbing onto and off of my examination table, however no lumbosacral spasm was present." Id. at 149. He also recognized decreased left leg strength measuring four out of five, that Plaintiff walked with a limp, and had a positive straight leg raise. Id. Based upon his observations, Dr. Greenberg concluded that

Plaintiff "would be unable to perform work related activities that required heavy lifting or bending." Id.

Subsequently, at Plaintiff's representative's request and based on the same June, 2003 examination, Dr. Greenberg completed the 2004 Assessment. See id. 214-23. In the 2004 Assessment, Dr. Greenberg indicated that Plaintiff's pain was continuous and that he had chronic pain syndrome. Id. at 215. He also noted that based on Plaintiff's subjective reporting and his objective findings, Plaintiff was experiencing marked pain[7] which mildly restricted his ability to maintain attention and concentration and to interact appropriately with the public and which markedly restricted his ability to perform activities within a schedule and to complete a normal workday/workweek. Id. at 217-18.[8] In addition, Dr. Greenberg indicated that, assuming Plaintiff could sit and stand at will, Plaintiff could work for a total of four to five hours a day, five days a week. Id. at 221. Lastly, he concluded that Plaintiff could frequently and occasionally lift between one to five pounds. Id. at 222.

Preliminarily, the Court notes that Dr. Greenberg examined Plaintiff on only one occasion, and thus, his opinions were not entitled to deference. See McSwain, 814 F.2d at 619. In any event, the ALJ cited specific reasons for discounting Dr. Greenberg's opinions. See Tr. at 18. If the ALJ's decision to discount the opinions stated by Dr. Greenberg in the 2004 Assessment is supported by substantial evidence, then the ALJ was not required to include any restrictions arising from that assessment in the hypothetical to the VE.

---

[7] Marked pain was described as a 6 or 7 on a pain scale of 1-10. Id. at 217.

[8] A marked restriction indicates that Plaintiff's ability to function in the indicated area is "seriously limited," while a mild restriction indicates that Plaintiff's ability to function in the indicated area is "limited but not precluded." Id. at 218

Therefore, the Court will determine whether the reasons given by the ALJ for discounting the 2004 Assessment are supported by substantial evidence.

The ALJ addressed Dr. Greenberg's opinions and determined that the opinions reflected in the 2004 Assessment were of "little probative weight." Id. at 18. The ALJ pointed out that the 2004 Assessment was completed almost one-and-a-half years after Dr. Greenberg actually examined Plaintiff, and were contradictory to the doctor's original opinions. Id. The ALJ also discredited Dr. Greenberg's opinions because he limited Plaintiff's ability to lift to five pounds, and to sit, stand, and walk without any explanation. Id. Dr. Greenberg noted that the 2004 Assessment was based only on his June, 2003 examination, and there did not appear to be any further examination, testing, or review of objective evidence on which Dr. Greenberg based his opinions. See id. at 220. In his initial observation, Dr. Greenberg concluded only that Plaintiff could not perform heavy lifting or bending, id. at 149, but then in the 2004 Assessment limited Plaintiff to lifting no more than one to five pounds frequently or occasionally with other marked restrictions, see id. at 222. Dr. Greenberg's records give no explanation for these significant changes. Thus, the Court finds that this reason for discounting Dr. Greenberg's 2004 Assessment is supported by substantial evidence. See Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118 (6th Cir. 1994) (upholding the ALJ's rejection of a physician's second opinion because it differed from that physician's original opinion where no objective evidence supported the change).

The ALJ also discounted the opinions in the 2004 Assessment because they were inconsistent with the other medical evidence of record. Id. at 18. The ALJ pointed out that

Lance I. Chodosh, M.D., a consultative examiner who examined Plaintiff on January 21, 2003, "opined that the claimant had no evidence of physical impairment and he had no work-related limitations." Id. at 16.  Further, as discussed above, the Clinic notes only establish that Plaintiff's lumbar spine was tender and that his pain was controlled through medications. See id. at 141-43, 197-213, 224-27.  The ALJ also noted that both of the State Agency Medical Consultants found Plaintiff able to perform light work. Id. at 19.

Lastly, the ALJ noted that the 2004 Assessment was inconsistent with Plaintiff's reported activities. See id. at 18.  Plaintiff testified that, in his free time and with frequent breaks, he tears apart radiators for three to four hours a day, which includes lifting fifteen to twenty pounds. See id. at 426.  He also washes the dishes, does his own laundry, vacuums, sweeps, takes out the trash, uses the weed eater, goes grocery shopping, unloads the shopping cart, drives a car for twenty to thirty minutes at a time, and rode to the hearing for one-and-a-half hours without a break. See id. at 426-29, 431.  He further testified that he can sit for twenty to forty minutes before he must shift to find a comfortable position, stand for maybe an hour, bend at the waist and squat with pain, and walk for thirty minutes. Id. at 432-34.  The undersigned agrees with the ALJ's determination that the limitations contained in the 2004 Assessment are inconsistent with Plaintiff's reported daily activities. For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's determination that Dr. Greenberg's opinions from the 2004 Assessment were entitled to little weight and should not be included as limitations in the hypothetical question presented to the VE, see McSwain, 814 F.2d at 620 n.1.

Plaintiff also challenges the ALJ's failure to include his mental restrictions in the hypothetical question. See Plaintiff's Memorandum at 13. As support for this contention, Plaintiff cites to the opinions of Louis Legum, Ph.D., a consultative examiner, and Gary W. Buffone, Ph.D., a state agency medical consultant. See id. The Commissioner argues that the ALJ did not need include any mental limitations in the hypothetical question because the ALJ "properly found that Plaintiff did not have a severe mental impairment." Commissioner's Memorandum at 10.

Dr. Legum met with Plaintiff on June 17, 2003. See Tr. at 173. After the visit, Dr. Legum opined that the "evaluation suggests an individual of average intellectual abilities who does not appear to be in any obvious psychological distress but there are some indications of mild to moderate physical pain." Id. at 177. He further offered the following impressions: "Axis I: Intermittent Explosive Disorder, rule out; Chronic Pain Disorder Due to General Medical and Psychological Factors; Polysubstance Abuse/Dependence, rule out; Axis II: Personality Disorder NOS, rule out; Axis III: History of MVA and some sequela in back; Axis IV: Psychosocial stressors: loss of vocational, functional capabilities, economic difficulties; Axis V: GAF 55." Id. at 177-78.[9] Dr. Legum did not suggest any functional limitations arising from these impressions, and instead, opined that Plaintiff "might be considered as a viable candidate for the Vocational Rehabilitation program." Id. at 177.

Subsequently, on July 21, 2003, Dr. Buffone reviewed Plaintiff's records, including Dr. Legum's assessment, and completed a Psychiatric Review Technique (PRT) on Plaintiff.

---

[9] A GAF of 55 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers of co-workers)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 34 (4th ed., text rev. 2000).

See id. at 159-172.  In the PRT, Dr. Buffone considered whether Plaintiff suffered from severe somatoform disorder, personality disorder, or substance addiction disorder and noted that Plaintiff suffered only mild restriction of activities of daily living, difficulties in maintaining social function, and difficulties in maintaining concentration.  Id. at 159, 169.  Accordingly, Dr. Buffone opined that Plaintiff's impairment(s) were not severe.  Id. at 159.

The ALJ discussed Dr. Legum's and Dr. Buffone's assessments and noted that Dr. Buffone found "no severe mental impairment."  Id. at 16, 19.  Further, the ALJ stated "that the claimant did not allege a mental impairment and there is no indication that he has ever sought or received any mental health treatment."  Id. at 19.  Nevertheless, contrary to the Commissioner's assertion, the ALJ determined that Plaintiff's somatoform disorder, which is classified as a mental impairment,[10] was severe.  See Tr. at 19.  The hypothetical question the ALJ propounded to the VE, however, did not include this disorder or any mental limitations.  See id. at 444.

The very definition of a severe impairment is one "which significantly limits your physical or mental ability to do basic work activities."  20 C.F.R. § 416.920.  Thus, it appears that if the ALJ properly concluded that Plaintiff's somatoform disorder was a severe impairment, he should have included this impairment, or limitations arising from this impairment, in the hypothetical posed to the VE.  See Nation v. Barnhart, 153 Fed.Appx. 597, 599 (11th Cir. 2005) ("An ALJ asks hypotheticals posing the limitations the ALJ found severe."); see also Russell v. Barnhart, 58 Fed.Appx. 25, 30 (4th Cir. 2003) ("[T]he

---

[10] An individual with somatoform disorder complains of physical symptoms for which there is no physical cause.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.07.

hypothetical question may omit non-severe impairments, but must include those that the ALJ finds to be severe.").

In Pendley v. Heckler, the Eleventh Circuit Court of Appeals considered a plaintiff's challenge to the Commissioner's denial of benefits based upon his contention that the hypothetical question posed to the VE was inadequate. See 767 F.2d 1561, 1562 (11th Cir. 1985). While the hypothetical at issue included the plaintiff's physical impairments, it failed to include the plaintiff's anxiety and depression, both of which the ALJ had previously found to be severe impairments. See id. As a result, the Pendley court remanded the case stating that it could not "assume that the vocational expert would have answered in a similar manner had the ALJ instructed him to consider all of the [plaintiff's] severe impairments." Id. at 1563.

Here, the ALJ determined that Plaintiff's somatoform disorder was a severe impairment. Without including that impairment, or any limitations appearing to arise as a result of that impairment, in the hypothetical, the Court has no basis to assume that the VE's answers would have been the same had he considered this additional impairment. Thus, because the ALJ failed to include all of Plaintiff's severe impairments in the hypothetical, this case is due to be remanded.[11] On remand, the ALJ should pose a proper hypothetical to the VE which includes all of Plaintiff's severe impairments.[12]

---

[11] The Court notes that, while the ALJ may have determined that the physical limitations included in the hypothetical question propounded to the VE reflected the somatoform disorder, the ALJ did not explain this finding during the hearing or in the decision. Accordingly, based on the record, it appears that the ALJ may have failed to include any limitations arising from a disorder that he had previously determined was severe, and as such, the case is due to be remanded.

[12] In addition, the ALJ determined that Plaintiff's complaints of disabling pain were not fully credible, in part, because the complaints "far exceed the medical evidence of record . . . ." Tr. at 18.
(continued...)

### V. Conclusion

In accordance with the foregoing, it is hereby **ORDERED**:

1. To the extent Plaintiff requests oral argument on the issues presented in his Memorandum, it is **DENIED**

2. The Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and § 1383(c)(3) **REVERSING** the Commissioner's decision and **REMANDING** this matter with instructions to: 1) reconsider whether Plaintiff's somatoform disorder constitutes a severe impairment, and if so, propound another hypothetical question to the VE in accordance with the standards set forth in this decision; and 2) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of February, 2007.

*[signature]*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

lc2

Copies to:
Counsel of Record

---

[12](...continued)
However, a person's somatoform disorder, which causes such person to exaggerate his or her physical symptoms, may affect whether an ALJ should discount that persons's complaints of pain as unsupported by the objective medical evidence. See Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989). Thus, on remand, the ALJ may wish to consider whether Plaintiff's somatoform disorder was such that it would preclude a finding that Plaintiff's complaints of disabling pain were not credible.